UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT: NEW YORK
------------------------------------------------------------------x
OKLAHOMA SPECIALIZED TRANSPORT LLC,
d/b/a OKLAHOMA SPECIALIZED TRANSPORT, and
ELIZABETH WOMACK,

              Plaintiffs,                Case No.:       1:18-cv-04192

     -against-                    **AMENDED VERIFIED COMPLAINT**
                                         **and JURY DEMAND**
                                         (28 U.S.C. §1332(i) with State Claims)

CAPITAL STACK, LLC, ANNA N. RUBIN a/k/a
ANNA ZHIQUN, individually and as an undisclosed
agent of Capital Stack, LLC, DAVID RUBIN, a/k/a
DAVID RUBINOV, individually and as an
undisclosed agent of Capital Stack, LLC,
E-PRODIGY TECHNOLOGY, THE RUBIN
LAW FIRM as an undisclosed agent of Capital Stack,
LLC and FIG CAPITAL,

              Defendants.
------------------------------------------------------------------x

     **OKLAHOMA SPECIALIZED TRANSPORT LLC,** d/b/a OKLAHOMA

SPECIALIZED TRANSPORT**,** and **ELIZABETH WOMACK** the Plaintiffs in this case,

through their attorney, the Law Office of Robert J. Del Col, Esq., hereby allege, show, and

complain of the Defendants as follows:

<u>**Preliminary Statement**</u>

     FIRST:      This action arises from an interstate transaction which patently violates

New York's criminal loan sharking statute N.Y.PL §190.40, as well as N.Y. GOL §§5-501 and 5-

511, the operative rules governing usury and interest rates in New York. The Plaintiffs, all

residents of Bixby, Oklahoma, were solicited, tricked, and deceived into entering an agreement

that, while styled as one for the purchase of "*accounts receivable*" is, in actuality, a predatory

personal loan bearing an unconscionable and illegal 44% interest. As part and parcel of the

scheme to defraud Plaintiffs, Defendants, who are a pool of lawyers in league with securities law "*recidivists*," like others in the predatory loan industry, took advantage and exploited Plaintiffs' naiveté and lack of business acumen and preyed upon them. Importantly, it outwardly appears that the Defendant, *Capital Stack LLC*, is, in actuality, a corporate artifice created, controlled, and operated by an individual, Anna Rubin, who is an attorney. As more fully set forth in this Complaint, Capital Stack is the predatory lending arm of Ms. Rubin who, being an attorney, carefully crafts her loan instruments to avoid scrutiny under the loan sharking statute. Here, Plaintiffs assert and allege the loan agreement, while labeled a purchase of accounts receivable, is a ruse to circumvent the loan sharking statute. In this Complaint, Plaintiffs argue that no matter how labeled, the agreement in question is not a purchase of accounts receivable but rather, a thinly disguised predatory loan.

SECOND:     On the other hand, Defendant David Rubin, upon information and belief, is a securities law recidivist and is the husband of Defendant Anna Rubin. It is alleged by this Complaint that Mr. Rubin is an undisclosed principal and agent of Capital Stack whose identity and background was intentionally hidden from Plaintiffs. Indeed, it outwardly appears that Mr. Rubin, given his purported record and prior potential criminal activity, including securities and wire fraud is, in actuality, the mastermind of a widespread conspiracy to defraud otherwise innocent citizens of foreign states by deceiving them into executing "*accounts receivable*" purchase agreements that are, in reality, usurious loans in violation of both New York and federal law. Indeed, once discovery is underway, Plaintiffs believe sufficient evidence will be gathered to amend this Complaint to include a civil R.I.C.O. claim against Anna and David Rubin, as well as their various corporate artifice companies.

THIRD:       In this Complaint, Plaintiffs allege that no matter how ingenious Defendants were in crafting the agreement, the transaction is tainted by usury and cannot, under any theory, be enforced.

### General Factual Predicates and Overview

### The Parties

FOURTH:       Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

FIFTH:       Plaintiff Oklahoma Specialized Transport, LLC d/b/a Oklahoma Specialized Transport (hereinafter referred to as "OST") is a domestic limited liability company filed on January 9, 2017, with its principal place of business in Bixby, Oklahoma.

SIXTH:       Plaintiff Elizabeth Womack is a housewife and the registered agent on file for "OST" and is located at 4659 E. 144th Place, South Bixby, Oklahoma, 74009. "OST" is a family-owned trucking company. Plaintiff's husband, Danny Womack, is the principal employee.

SEVENTH:       Defendant Capital Stack, LLC (hereinafter referred to as "CS") is a limited liability company with its primary place of business being 11 Broadway, Suite 814, New York, NY 10004.

EIGHTH:       "CS" has also been formed under the state laws of Nevada.

NINTH:       Upon information and belief, "CS" of New York and "CS" of Nevada are one and the same and are collectively referred to as "CS", with finances and business operations intertwined as one.

TENTH:       The sole member of "CS" entities is David Rubin, a New York resident.

ELEVENTH:  As of this filing, Plaintiff's have not ascertained, but believe Anna Rubin is an attorney and the wife of David Rubin and was "ne Anna Zhiqun" prior to her marriage.

TWELFTH:   Defendant David Rubin, a/k/a David Rubinov, is alleged to be an undisclosed owner, manager, officer, director, and overseer at Capital Stack and other corporate artifices he operates. Defendant Rubin is, upon information and belief, is a convicted felon who has repeatedly engaged in other frauds. Mr. Rubin's office is believed to be 90 Broad Street, New York, New York.

THIRTEENTH:     Defendant Fig Capital operates from the same address as Capital Stack, Anna Rubin, and David Rubin, and is alleged to be another corporate artifice created for the sole purpose of bilking money from unsuspecting citizens and further, to hide the identity of Rubin from unsophisticated individuals, merchants, and business owners who fall into Defendants' trap.

FOURTEENTH:     Defendant eProdigy Technology operates from the same address as Capital Stack, Anna Rubin, and David Rubin, and is alleged to be another corporate artifice created for the sole purpose of bilking money from unsuspecting citizens and further, to hide the identity of Rubin from business owners and unsophisticated individuals who fall victim to Defendants' diabolical machinations.

**Jurisdiction and Venue**

FIFTEENTH:      Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

SIXTEENTH:      This action is commenced pursuant to New York State General Obligations Law §5-501, 511, and 513, as well as other precepts of New York Common Law, banking law, and penal law (PL §190.40). Jurisdiction is founded upon 28 U.S.C. §1332(a)(1).

SEVENTEENTH:      The amount in controversy exceeds $150,000.00, excluding interest and costs. Plaintiffs are also seeking compensatory, special, and punitive damages,

4

together with an award of costs and counsel fees pursuant to various provisions of N.Y. State Law.

EIGHTEENTH:        This Court has original subject matter jurisdiction under 28 U.S.C. §1332 because the Plaintiffs and Defendant are residents of different states with Plaintiffs hailing from Bixby, Oklahoma and Defendants being either citizens of the state or a New York corporation not registered or incorporated in the state of Oklahoma.

NINETEENTH:        Venue is proper under 28 U.S.C. §1391(a)(1)(2) because the events giving rise to Plaintiffs' claims occurred in this judicial district.

### Statement of Facts

TWENTIETH:        Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

TWENTY-FIRST:        This action arises from an interstate transaction which patently violated New York State's loan sharking statute PL §190.40, as well as GOL §§5-501 and 5-511. The Plaintiffs, residents of Bixby, Oklahoma, were solicited, tricked, and deceived into entering an agreement that, while styled as one for the purchase of "*future receipts*" is, in reality, a predatory personal loan bearing an unconscionable and unlawful 44% rate of interest. Under current New York State law, the highest agreeable interest rate for an individual is 16%, and for corporations, the rate is 25%. (N.Y. GOL §5-501; N.Y. BNK §14[a]; N.Y.PL §190.40)

TWENTY-SECOND: On or about February 26, 2012, Plaintiffs, a small family-owned business merchant, entered into a personal/business loan with the Defendant, Capital Stack, LLC. This loan was characterized by Defendants in the contract agreement as a "*purchase and sale of future receipts*" in order to disguise the real nature of the transaction from the Plaintiff. The Plaintiff unknowingly entered into what can only be classified as a usurious loan contract which

requires the repayment of $259,000.0 for a stated loan amount of $150,000.00. The loan was brokered and serviced by the Defendant. The loan required that the Plaintiff repay, in full, the principal loan interest, which also includes the origination fee, the underwriting fee, the "*Non-Sufficient Fund*" (NSF) fee (four separate charges), the "*stopped fee*," the ACH processing fee, the UCC filing fee, the default fee, and a funding fee. The loan included a personal confession of judgment against Plaintiff Elizabeth Womack and the other Defendants.

TWENTY-THIRD:    Plaintiff's loan delegation is fulfilled through ACH (Automated Clearing House) bank withdrawals in the amount of $1,700.00 per day. These withdrawals are made on a daily basis until the full loan and exhorbitant interest, which includes the above set out fees, are paid in full.

TWENTY-FOURTH: As part and parcel of Defendant's scheme to defraud Plaintiffs, Defendants, like others in the predatory loan sharking industry, took advantage of Plaintiffs' naivete and lack of business acumen to prey upon Plaintiffs. Importantly, it outwardly appears that Defendant "CS" is, in actuality, a corporate entity created, controlled, and operated by individual Anna Rubin, an attorney. As more fully set forth in this Complaint, Defendant "CS" is the predatory lending arm of Ms. Rubin who, being an attorney, carefully crafts her loan instruments to avoid scrutiny under the loan sharking statute and defraud innocent borrowers desperate for cash. Here, the Plaintiffs assert and allege the loan agreement, while labeled an "*Agreement for the Purchase and Sale of Future Receipts*," is a mere ruse to circumvent the loan sharking statute and is a usurious transaction. It is alleged that no matter how ingenious Defendant was in crafting and composing the loan agreement, the transaction, in total, is clearly usurious, hence unenforceable. (GOL §5-511)

TWENTY-FIFTH:     As part and parcel of Defendant's nefarious actions, Plaintiff Elizabeth Womack was personally obligated for the full repayment amount of $259,000.00 when only $150,000.00 was borrowed.

TWENTY-SIXTH:     As of the date of this Complaint, Defendants have already withdrawn approximately $9,000.00 in order to "*service*" the loan.

### COUNT 1:
### Usury and Void Contract

TWENTY-SEVENTH:          Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

TWENTY-EIGHTH:  The Defendant "CS'" "*Agreement for the Purchase or Sale of Future Receipts*" is a usurious instrument and transaction and void under General Obligations Law §§5-511 and 5-513. In New York State, a lender cannot charge interest higher than 16% per annum (see GOL §5-501[1]). It is alleged that Defendant "CS" charged the Plaintiff's interest at a rate of 44% on what was, in actuality, a personal loan, which is an unconscionable usurious rate in violation of the loan sharking laws.

TWENTY-NINTH:     The statutory paradigm at work in this case is as follows:

In New York, "*a person is guilty of criminal usury when, not being authorized or permitted by law to do so, knowingly charges, or takes or receives any money or other property as interest on a loan or forbearance of any money or property at a rate exceeding twenty-five percentum or the equivalent rate for a longer or shorter period.*" (N.Y. PL §190.40)

THIRTIETH:  On the other hand, the relevant provisions of the N.Y. General Obligations Law are GOL §§5-501 ('*usury forbidden*') and 5-511 ('*usurious contracts void*') which provide, in relevant part:

"*1. The rate of interest, as computed pursuant to this title, upon the loan or forbearance of any money, goods, or things in action, except as provided in subdivisions five and six of this section or as otherwise provided by law, shall be*

*six per centum per annum unless a different rate is prescribed in section fourteen-a of the banking law."* (§14[a] of the banking law establishes a maximum rate of interest on personal loans at 16%, while N.Y.CPL §190.40 sets a maximum overall usury rate at 25%.)

"*2. No person or corporation shall, directly or indirectly, charge, take or receive any money, goods or things in action as interest on the loan or forbearance of any money, goods or things in action at a rate exceeding the rate above prescribed. The amount charged, taken or received as interest shall include any and all amounts paid or payable, directly or indirectly, by any person, to or for the account of the lender in consideration for making the loan or forbearance as defined by the banking board pursuant to __subdivision three of section fourteen-a of the banking law__ except such fee as may be fixed by the commissioner of taxation and finance as the cost of servicing loans made by the property and liability insurance security fund.*" (Emphasis added)

N.Y. GOL §5-511 entitled "*usurious contracts void*" provides:

"*1. All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is prescribed in section 5-501, shall be void, except that the knowingly taking, receiving, reserving or charging such a greater sum or greater value by a savings bank, a savings and loan association or a federal savings and loan association shall only be held and adjudged a forfeiture of the entire interest which the loan or obligation carries with it or which has been agreed to be paid thereon. If a greater sum or greater value has been paid, the person paying the same or his legal representative may recover from the savings bank, the savings and loan association or the federal savings and loan association twice the entire amount of the interest thus paid.*

*2. Except as provided in subdivision one, whenever it shall satisfactorily appear by the admissions of the defendant, or by proof, that any bond, bill, note, assurance, pledge, conveyance, contract, security or any evidence of debt, has been taken or received in violation of the foregoing provisions, __the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled__.*" (Emphasis added)

THIRTY-FIRST:     The Plaintiffs entered into a contractual agreement with the

Defendant "CS" to borrow money for Plaintiff's business, "OSC." On or about February 26,

2018, this loan was obtained by way of a contractual agreement and was executed by the parties. (See Ex. "A")

THIRTY-SECOND:   The Plaintiff had an absolute obligation to repay the loan, which was not contingent on any event or occurrence, nor was repayment associated with any accounts receivable. The Plaintiff was unable to meet the loan payment of $1,700.00 per day. The amount owed to the Defendant pursuant to the contract was exceedingly high because of the usurious interest rate, thereby resulting in the Plaintiff defaulting on the loan.

THIRTY-THIRD:       The unconscionable 44% interest rate on the personal business loan exceeds the maximum interest rate allowed by the loan sharking statutes. The interest rate includes fees deceptively characterized by the Defendant as "*origination fee*" and "*processing fee*."

THIRTY-FOURTH:   Defendant's intent was to deceive and trick the Plaintiff by making it appear in the carefully crafted loan agreement that the interest rate was 8% when, in fact, it was 44%. A skilled, sharp, and trained eye is required to analyze the contract to determine the true 44% interest rate. Plaintiffs are not sophisticated in finance and business. To the contrary, they own and operate a small family-owned trucking company that has essentially one employee: Danny Womack, Plaintiff's husband.

THIRTY-FIFTH:       The Defendant "CS'" "*Agreement for the Purchase or Sale of Future Receipts*" was a deceptively disguised, usurious loan which is wholly void pursuant to GOL §5-511(1). Plaintiffs allege that the attorney-drafted document was part of a high-pressure sales tactic, including repeated calls and threats to withdraw the offer if Plaintiffs did not sign "*immediately*" upon receipt.

THIRTY-SIXTH:    In New York, a corporation may assert: a) an affirmative defense to the enforcement of a usurious contract on any agreement or loan which exceeds the criminal usury statute. (CPL §190.40)

THIRTY-SEVENTH: By virtue of the fact that the loan in question has an effective interest rate of nearly 20% over the criminal usury statute, the agreement is void *ab nitio*. (N.Y.GOL §§5-501; 5-511.)

THIRTY-EIGHTH:    By this Complaint, Plaintiffs allege that while dressed like sheep, the Defendants were wolves who tricked Plaintiffs into signing "*personally*", which transmuted the agreement from one between two corporations to one between an individual (Plaintiff Womack) and Defendants. Hence, by this Complaint, Plaintiffs allege that when boiled down, the agreement was a personal loan with a 44% rate of interest.

## COUNT 2:
## Defendant's Failure to Disclose

THIRTY-NINTH:    Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

FORTIETH:    Capital Stack, LLC is intertwined with "Rubin Law." The Defendants failed to disclose to Plaintiffs the interrelated relationship between the Capital Stack, LLC, the purchaser of Plaintiff's receipts and future receivables with the law firm of Anna Rubin, who, it is alleged, is a member of Capital Stack, LLC.

FORTY-FIRST:    Plaintiff avers that the business operations of Defendant "CS" and Rubin Law are inextricably intertwined and acts, for all intents and purposes, as one entity. This information was not disclosed to the Plaintiffs by the Defendant at any time prior to entering into the contracted loan agreement at issue.

FORTY-SECOND:   David Rubin shares the same physical office with Defendant "CS", and all of Rubin's law office attorneys are listed on the promotional materials for Defendant "CS" as if the entities are one and the same and operating in unity.

FORTY-THIRD:   Anna Rubin, Esq., the wife of David Rubin, is general counsel of Capital Stack since 2014. She is also the principal and founder of the Rubin Law Firm, PLLC, which just happens to represent "*alternative funding companies*." She is a member of the New York State Bar and is admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York.

FORTY-FOURTH:   The Defendant "CS" has misrepresented and failed to disclose to the Plaintiffs that "CS"' sole principal is David Rubin. It appears that David Rubin changed his name from "*David Rubinov*" to prevent the Plaintiff and other borrowers from discovering that David Rubin of "CS" was a "*Securities Law Recidivist*" pursuant to the Security and Exchange Commission. (See: Security and Exchange Commission Litigation Release No. 18222/July 10, 2003: Security Exchange Act of 1934 Release No.: 46158/July 2, 2002 Administrative Proceedings File No.: 3-10821; and http://nypost.com/1999/08/04/SEC-charges-87-inmicro-cap-fraud/)

FORTY-FIFTH:   The failure of Defendant "CS" to disclose to Plaintiff that the law firm associated with David Rubin was the same person as "*David Rubinov*", the CEO of E. Prodigy Techology Redetened, who is the same person as David Rubin or Capital Stack, LLC, prevented the Plaintiff's from making informed and educated decisions about entering into a contractual loan agreement with Defendant "CS", which was operated an managed by criminal and other nefarious characters.

FORTY-SIXTH:     David Rubin, a/k/a David Rubinov, is the CEO of eProdigy. Mr. Rubin describes his business as a "*merchant cash advance business*." "*Cash advance*" is a euphemism for a loan, and one of his business entities is "*eProdigy Loans*."

FORTY-SEVENTH:  David Rubin's companies, in addition to "CS" and eProdigy, also include 1 Workforce, ACH Capital, ACH d/b/a ACH Banking, eProdigy Loans, and Daily Founder. In New York, the loans offered by Defendants to Plaintiffs are illegal and have been outlawed inasmuch as they are a scourge on society and prey on the most vulnerable.

FORTY-EIGHTH:     It is alleged that in 2015, Defendant Capital Stack reorganized its companies under "*one percent entity eProdigy.*" eProdigy's online business information clearly states that "*eProdigy's platform helps small and midsize businesses in nearly every industry obtain working capital they need to grow in three easy steps; with decisions in five minutes and funding from $1,000 to $250,000 available for delivery on the day of approval.*" In other words, eProdigy assists Capital Stack, LLC in creating a loan for the innocent and unsuspecting merchant.

FORTY-NINTH:     Capital Stack, LLC utilizes and promotes Fig Capital, LLC as they are, for all intents and purposes, intertwined. Fig Capital, LLC's online "*promotional material*" acknowledges that small business entities, such as the Plaintiff, "*have their share of struggles in the beginning.*" Moreover, they state: "*(w)e often see entrepreneurs that have failed because they lacked a business line of credit they need **badly**.*" (Emphasis added)

FIFTIETH:          Fig Capital, LLC's online promotional material also reads, in part: "*We are dedicated to improving the standards of short-term small business **loans** for the innovator in all of us.*" Clearly and unequivocally, Fig Capital LLC characterizes the transaction as one of a "*loan,*" not a "*purchase and sale of future receipts*" as Defendant deceptively

characterizes this transaction. Importantly, Plaintiffs allege that when discussing the loan with Capital Stack representatives, Plaintiffs were told the "*loan was at 8% interest*", but when a complicated written agreement was presented, Plaintiffs were tricked into relying on Capital Stack's representations that it was "*just New York legal stuff*" and the deal was on an 8% loan, which it was not.

FIFTY-FIRST: Plaintiffs aver that Fig Capital, LLC was a money funneling business selected solely by the Defendant for the intended purpose of draining Plaintiffs of cash through electronic debits. CS has a long-term business relationship with Fig Capital, LLC.

FIFTY-SECOND: Plaintiffs allege the name of this information was disclosed prior to entering into the contractual loan agreement with the Defendants, and had such information been disclosed, the Plaintiff would never have entered into the usurious agreement.

FIFTY-THIRD: Plaintiff avers that Defendant "CS" failed to disclose its relationship with Fig Capital, LLC d/b/a Axis. Axis is the funnel through which "CS" obtain its money from the Plaintiff. On February 26, 2018, the date the usurious loan contract was signed, Plaintiff also signed at "CS'" direction, a "*professional service fee*" agreement.

FIFTY-FOURTH: The agreement between Plaintiff and Fig Capital, LLC d/b/a Axis withdrew from Plaintiff's checking account/savings account $6,000.00 as "*the depository financial institution for the amount below from the gross funding (advance) amount and to make such payment directly to the company.*" This document is extremely ambiguous and unclear as to what this actually means, other than the $6,000.00 was nothing more than additional, disguised interest on the loan by Defendant "CS".

FIFTY-FIFTH: Fig Capital d/b/a Axis collected payments on the loan via electronic debits from the Plaintiff's checking and/or savings accounts or both.

## COUNT 3:
## Fraudulent Misrepresentation

FIFTY-SIXTH:        Plaintiffs repeat and re-allege each and every one of the foregoing

allegations as if fully repeated, re-alleged, and set forth herein.

FIFTY-SEVENTH:        The Defendant "CS" acted in such a way as to enrich themselves at

the expense of the Plaintiffs, knowingly and fraudulently allowing the Plaintiffs to enter into the

usurious agreement and thereby breaching their fiduciary duty to the Plaintiffs. As a result, the

Plaintiffs sustained serious financial injury and business hardship.

FIFTY-EIGHTH:        The aforementioned actions of Defendant "CS" were acted out in

such a way that they were willful, wanton, and reckless and caused harm to the Plaintiff's

finances and business by perpetrating fraud upon the Plaintiffs in connection with a private

personal business loan.

FIFTY-NINTH:        Public policy prohibits Defendant "CS" from collecting from

Plaintiffs based upon Defendant's acts of corruption. "*No one shall be permitted to profit by his*

*own fraud, or to take advantage of his own wrong, or to find any claim upon his own unequity or*

*acquire property by his own crime.*" (See: *Flegenheimer v. Brogan*, 284 N.Y. 268, 272).

SIXTIETH:        The usurious business loan agreement between the Plaintiff, Elizabeth

Womack, and the Defendant, Capital Stack, LLC as referred to in the "*Agreement for the*

*Purchase or Sale of Future Receipts*" cannot be cured by the Defendant, Capital Stack, LLC, and

Defendant must forfeit all principal and interest and Plaintiffs shall recover the usurious portion

of the interest paid to the Defendant, Capital Stack, LLC. (See: GOL §§5-511[1], 5-513.)

SIXTY-FIRST:        Plaintiffs allege that during conversations with representatives of

Fig Capital and Capital Stack, the Plaintiffs were lied to when they were told the "*loan was at*

*8% interest*" and that there were "*reasonable fees*" and Plaintiffs "*had to hurry or the money*

*would be loaned to someone else*." Further, when Plaintiffs received the actual agreement, one they did not understand, they were assuaged by Defendants who said "*don't worry, this is just how it's done here in New York*." Moreover, Plaintiffs were pressured by Fig Capital and Capital Stack, who represented "*this is a great offer and if you lived in New York, we couldn't do the loan*," failing to advise Plaintiffs that it would be illegal to make such an offer in New York.

## COUNT 4:
## Fraudulent Misrepresentation

SIXTY-SECOND:     Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

SIXTY-THIRD:     It is alleged that Defendant "CS'" lenders and accounting practices were conducted in a negligent manner inconsistent with the industry standards and thereby causing financial and business loss and hardship to the Plaintiffs.

SIXTY-FOURTH:     But for Defendant "CS'"s intentional, deliberate, and reckless failure to adhere to the industry standards in regard to contractual loans, the Plaintiffs would not have sustained serious financial and business damages. On this count, Plaintiffs, when inquiring about the length and scope of the agreement and its calculations, were told "*our accountants figure interest at 8%*", which prompted Plaintiffs to sign an agreement they did not understand.

## COUNT 5:
## Defendant Breached Fiduciary Duty,
## Covenant of Good Faith and Fair Dealings

SIXTY-FIFTH:     Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

SIXTY-SIXTH:     The essential elements to pleading a cause of action for breach of fiduciary duty under New York law are:

1. That a fiduciary relationship existed which gave rise to (a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any matter relating to the plaintiff;

2. That the defendant advanced his or her own interests to the detriment of the plaintiff;

3. That the plaintiff sustained damages;

4. That the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty.

SIXTY-SEVENTH:   Defendants knowingly prepared and induced the uninformed and unknowing Plaintiffs into a contractual loan agreement which was usurious and in violation of the loan sharking statutes. The descriptive practices of the Defendant violates General Business Law §349.

SIXTY-EIGHTH:     Defendant "CS" took advantage of Plaintiff's dire financial circumstances and limited laymen's knowledge and understanding of the terms of the agreement while Defendant "CS" had the upper hand in financial dealings. Defendant "CS" intended to profit at the expense of the Plaintiffs, over whom Defendant "CS" holds a fiduciary duty.

SIXTY-NINTH:     Plaintiffs allege that because Defendants had a complete and unequivocal monopoly and advantage regarding the structure, formation, and operation of the agreement, that such a disparity gives rise to a fiduciary duty under New York Law. Plaintiffs further allege that the lopsided playing field that produced a clearly usurious loan was intentionally and deliberately created by Defendants in order to harm these Plaintiffs and others like them.

SEVENTIETH:     Defendant "CS'" breach of his fiduciary duty and covenant of good faith and fair dealing resulted in extreme financial and business injury to the Plaintiffs.

SEVENTY-FIRST:    As a direct, proximate result of Defendant's deliberate, calculated, criminal, and reckless dealings with the Plaintiffs via the February 26, 2018 contract, the Plaintiffs incurred financial damages and business damages, plus interest and costs, attorney's fees and expenses and will continue to incur damages in unconscionable amounts to be proven at the time of trial. Additionally, the Plaintiffs seek incidental and consequential damages and fees and costs.

**COUNT 6:**
**Declaratory Judgment**

SEVENTY-SECOND:        Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

SEVENTY-THIRD:   Plaintiffs herein allege that the agreement between the parties is: (i) a loan, not an agreement to purchase accounts receivable; (ii) that it was a personal loan; (iii) that the effective rate of interest exceeds N.Y.PL §§190.40 (25%); and finally, (iv) the agreement was given what is asserted herein, the product of a well-orchestrated scheme to defraud.

SEVENTY-FOURTH:        By this Complaint, Plaintiffs allege that their agreement constitutes a "*justiciable controversy*" under New York Law and is therefore ripe for declaratory judgment.

**COUNT 7:**
**Intentional Infliction of Emotional Distress**

SEVENTY-FIFTH:    Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

SEVENTY-SIXTH:   Intentional infliction of emotional distress occurs when: (i) the Defendant engages in extreme or outrageous conduct that is (ii) directed at Plaintiff with (iii) the intention to cause, or with reckless disregard of substantial probability of causing severe

emotional distress; and (iv) severe emotional distress to the Plaintiff is proximately caused by Defendants' conduct.

SEVENTY-SEVENTH:          Plaintiffs assert that tricking unsuspecting and unsophisticated people from Bixby, Oklahoma in signing an agreement so patently illegal and unconscionable is, *per se*, extreme conduct. Moreover, having slick and fast-talking con-men lure Plaintiffs into a sense of security that they were signing an agreement that called for 8% interest, as opposed to what they get which is a usurious agreement that bears 44% interest is best described as outrageous, even criminal. Plaintiffs further contend that the substantial probability of emotional distress was manifestly self-evident. Plaintiffs will prove that this whole experience has caused severe anxiety, fear of retribution once they suspected they were dealing with criminals from New York. Moreover, they experienced an inability to sleep and marital discord because of Defendants' actions. All of this distress was directly caused by Defendants' immoral and unlawful conduct.

## COUNT 8:
## Deceptive Acts and Practices (N.Y. GOL §349)

SEVENTY-EIGHTH: Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully repeated, re-alleged, and set forth herein.

SEVENTY-NINTH:          In New York, in order to plead a private claim to redress deceptive acts and practices, a person must allege:

(i)      Defendant committed an unfair or deceptive act;

(ii)     That the act was performed in the conduct, business, trade, or commerce, or in the furnishing of a service;

(iii)    The act or practice was consumer-oriented;

(iv)     The act or practice was misleading in a material way;

18

(v)      That the prohibited act was the proximate cause of injury to Plaintiff.

EIGHTIETH:          In this Complaint, Plaintiffs allege that Defendants pursued and successfully secured an unlawful and usurious contract that was solicited over the internet and via phone aimed at unsophisticated consumers. It is further alleged that while representing that the loan was at a rate of 8%, it was, in fact, 44%. Plaintiffs further allege that while in discussions with "*loan officers*" at Capital Stack, Plaintiffs were led to believe it was an 8% loan when they received a document entitled "*purchase of accounts receivable*." They were told "*not to worry…it's just a fancy name for a loan*." Sadly for Plaintiffs, they believed the lies they were told and signed an usurious agreement. Clearly, the creation of the usurious agreement is the cause of all of Plaintiffs' financial harm and emotional distress.

**WHEREFORE**, the Plaintiffs hereby demand a Judgment of this Court:

1.      On the first count, Plaintiffs demand that the usurious loan agreement contemplated by this Complaint be declared a nullity and that Defendant pay Plaintiffs $9,000.00 in paid interest, plus costs and counsel fees to be determined at trial.

2.      On the second count, Plaintiffs demand the usurious loan agreement contemplated by this Complaint be voided by the Court, plus punitive damages in the amount of $1,000,000.00, plus counsel fees and costs.

3.      On the third count, Plaintiffs demand the usurious loan contract contemplated by this Complaint be voided and punitive damages in the amount of $1,000,000.00, together with counsel fees and costs be awarded to Plaintiffs.

4.      On the fourth count, Plaintiffs demand a full release from all obligations arising under the usurious loan contract contemplated by this Complaint, together with punitive damages in the amount of $1,000,000.00, plus an award of counsel fees and costs associated

with this litigation.

5.      On the fifth count, Plaintiffs demand that they be released from all obligations arising under the usurious loan agreement contemplated by this Complaint, together with punitive damages no less than $1,000,000.00, plus attorney fees and costs.

6.      On the sixth count, Plaintiffs demand declaratory judgment in their favor as more fully set forth in the Complaint.

7.      On the seventh count, Plaintiffs demand compensatory damages in the amount of $100,000.00, plus punitive damages no less than $1,000,000.00.

8.      On the eighth count, Plaintiffs demand compensatory damages in the amount of $250,000.00 and punitive damages of no less than $1,000,000.00.

9.      On all eight counts, Plaintiffs demand statutory interest on all awards going back to the proven date of harm.

Dated: June 4, 2018                              Respectfully Submitted,

                                                 _____/s/_____
                                                 ROBERT J. DEL COL, ESQ.
                                                 *Attorney for Plaintiffs*
                                                 120 Fourth Ave.,
                                                 Bay Shore, NY 11706
                                                 631-271-4684

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

------------------------------------------------------------------------x

OKLAHOMA SPECIALIZED TRANSPORT LLC,
d/b/a OKLAHOMA SPECIALIZED TRANSPORT, and
ELIZABETH WOMACK,

              Plaintiffs,                   Case No.: _____

     -against-                    **INDIVIDUAL VERIFICATION**
                                  (28 U.S.C. §1332(i) with State Claims)

CAPITAL STACK, LLC, ANNA N. RUBIN,
individually and as an undisclosed agent of
CAPITAL STACK, LLC, DAVID RUBIN,
individually and as an undisclosed agent of
CAPITAL STACK, LLC, and E-PRODIGY, INC.,

              Defendants.

------------------------------------------------------------------------x

STATE OF OKLAHOMA)

COUNTY OF BIXBY)   ss.:

DANNY WOMACK, being duly sworn, deposes and says; that I am a representative for OKLAHOMA
SPECIALIZED TRANSPORT LLC, d/b/a OKLAHOMA SPECIALIZED TRANSPORT, one of the
Plaintiffs, herein, that I have read the foregoing VERIFIED COMPLAINT and knows the contents
thereof; that the same are true to my own knowledge, except as to the matters therein stated to be on
information and belief, and that as to those matters, I believe them to be true.

X   _____
       DANNY WOMACK

                  Sworn to before me this
                    9 day of May, 2018

                  _____
                      Notary Public

Saml. A. Ramsey
Comm. No. 04010267
Notary Public
Exp. 11/10/2020
State of Oklahoma

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------------x
OKLAHOMA SPECIALIZED TRANSPORT LLC,
d/b/a OKLAHOMA SPECIALIZED TRANSPORT, and
ELIZABETH WOMACK,

               Plaintiffs,               Case No.: _____

      -against-                  **INDIVIDUAL VERIFICATION**
                                        (28 U.S.C. §1332(i) with State Claims)

CAPITAL STACK, LLC, ANNA N. RUBIN,
individually and as an undisclosed agent of
CAPITAL STACK, LLC, DAVID RUBIN,
individually and as an undisclosed agent of
CAPITAL STACK, LLC, and E-PRODIGY, INC.,

              Defendants.
------------------------------------------------------------------------x

STATE OF OKLAHOMA)

COUNTY OF BIXBY)  ss.:

ELIZABETH WOMACK, being duly sworn, deposes and says; that I am one of the Plaintiffs herein, that I have read the foregoing VERIFIED COMPLAINT and knows the contents thereof; that the same are true to my own knowledge, except as to the matters therein stated to be on information and belief, and that as to those matters, I believe them to be true.

                        x _Elizabeth Womack_
                           ELIZABETH WOMACK

               Sworn to before me this
                   day of May, 2018

                    Notary Public

Sami A. Ramsey
Comm. No. 04010367
Notary Public
Exp: 11/10/2020
State of Oklahoma

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT**
Index No.:      1:18-cv-04192

---

OKLAHOMA SPECIALIZED TRANSPORT LLC,
d/b/a OKLAHOMA SPECIALIZED TRANSPORT, and
ELIZABETH WOMACK,

      Plaintiffs,

  -against-

CAPITAL STACK, LLC, ANNA N. RUBIN a/k/a
ANNA ZHIQUN, individually and as an undisclosed
agent of Capital Stack, LLC, DAVID RUBIN, a/k/a
DAVID RUBINOV, individually and as an
undisclosed agent of Capital Stack, LLC,
E-PRODIGY TECHNOLOGY, THE RUBIN
LAW FIRM as an undisclosed agent of Capital Stack,
LLC and FIG CAPITAL,

      Defendants.

---

### VERIFIED COMPLAINT and JURY DEMAND
### (28 U.S.C. §1332(i) with State Claims)

**Attorney's Signature Pursuant
to 22 NYCRR 130-1.1a**

---

**Robert J. Del Col, Esq.**

---

**ROBERT J. DEL COL, ESQ.**
*Attorney for Plaintiffs*
120 Fourth Ave.,
Bay Shore, NY 11706
(631) 271-4684

---

*Service of a copy of the within*        *is hereby admitted.*

    *Dated:*.........................................................................
                 *Attorney(s) for*