**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _8-30-19_

-------------------------------------------------------x

ELIZABETH WOMACK & OKLAHOMA     :
SPECIALIZED TRANSPORT, LLC,     :
    :
            **Plaintiffs,**     :
    :
        -against-     :     **1:18-cv-04192 (ALC)**
    :
CAPITAL STACK, LLC ET AL.,     :     <u>**OPINION & ORDER**</u>
    :
    :
            **Defendants.**     :
    :
    :
    :

-------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

       Plaintiffs Oklahoma Specialized Transport LLC ("OST"), and Elizabeth Womack bring

this action against Defendants Capital Stack, LLC ("Capital Stack"), Anna Rubin, David Rubin,

E-Prodigy Technology ("eProdigy"), The Rubin Law Firm, and Fig Capital alleging violations of

N.Y.PL §190.40, failure to disclose, fraudulent misrepresentation, breach of fiduciary duty,

breach of contract, and deceptive acts and practices. The Defendants now move to dismiss the

Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b) (1), (5) and (6). For the following

reasons, Defendants' motion to dismiss is granted.

<b>BACKGROUND</b>

**I.**      **Factual Background**

       The following facts derive from Plaintiffs' Second Amended Complaint ("SAC") and the

Agreement for the Purchase and Sale of Receipts ("the Agreement") it references.[1] See ECF No.

---

[1] A copy of the Agreement was attached to the first complaint filed by Plaintiffs on May 11, 2018. *See* ECF No. 1-
1. Plaintiffs did not attach the Agreement to the Amended Complaint or the Second Amended Complaint. A copy of
the Agreement is attached as Exhibit I to the Declaration of Jeffrey S. Boxer dated Oct. 29, 2018 ("Boxer Decl.")

35. Many of Plaintiffs' allegations are not consistent with the Agreement. The Court points out

that though a complaint's factual allegations are presumed true for motion to dismiss purposes,

the Court may consider documents attached to a complaint and "matters of which judicial notice

may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Under Fed. R.

Evid. 201(b)(2), courts may take judicial notice of facts which "can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned." Additionally, courts

may take notice of documents to establish their existence, not for the truth of the statements

contained in those documents. *See Global Network Commc'ns Inc. v. City of New York*, 458 F.3d

150, 157 (2d Cir. 2006).

After laying out Plaintiffs' allegations, the Court will highlight the provisions of the

Agreement relevant to Plaintiffs' claims.

## A. Plaintiffs' Allegations

Plaintiff OST is a family-owned trucking company with its principal place of business in

Bixby, Oklahoma. SAC ¶ 5-6. Plaintiff Elizabeth Womack is OST's registered agent and Danny

Womack is its principal employee. *Id.*

Plaintiffs describe Defendants as "disreputable businesspeople in league with a pool of

lawyers in league with securities law recidivists" who took advantage of and exploited Plaintiffs'

"naiveté" and lack of business acumen. *Id.* ¶ 1. Specifically, Plaintiffs allege they were solicited,

tricked, and deceived into entering a predatory personal loan agreement bearing an

unconscionable and illegal 44% interest. *Id.*

Plaintiffs also allege that Defendant Capital Stack is a predatory lending arm created by

Anna Rubin; a "crafty attorney" who carefully cloaks her loan instruments behind various labels

to avoid New York's "loan sharking statute". *Id*. The SAC claims she is also Capital Stack's general counsel and founded the Rubin Law Firm. *Id*. ¶ 43. The SAC also depicts Defendant David Rubin, Anna's husband, as Capital Stack's undisclosed principal and agent. *Id*. Plaintiffs' claim David did not reveal his identity and background to hide his "prior uncharged criminal activity, including securities and wire fraud". *Id*. Plaintiffs' further allege that Defendants eProdigy and Fig Capital are "corporate artifices" solely created to bilk money from unsuspecting citizens and to hide David Rubin's identity from unsophisticated individuals who fall victim to Defendants' "diabolical machinations". *Id*. ¶ 14.

### B. The Agreement

On February 26, 2018, OTC and Capital Stack entered the Agreement. SAC. ¶ 22. Pursuant to the Agreement, Capital Stack purchased $216,000 of OTC's future receivables for $150,000. *Id*. Plaintiff Elizabeth Womack signed the Agreement as the owner of OST. Womack also signed a Personal Guaranty of Performance (the "Guaranty") of the Agreement. *Id*; *See also* ECF No. 1-1. Boxer Decl. Exhibit 2.

The Agreement provides that Capital Stack would deliver the purchase price to OTC in exchange for a specified percentage of OTC's future receivables up to an agreed-upon amount:

> Seller, identified above, hereby sells, assigns and transfers to CAPITAL STACK, LLC, ... ("Buyer"), without recourse, the Specified Percentage of the proceeds of each future sale made by Seller (collectively "Future Receipts") until Buyer has received the Purchased Amount. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Seller's business. As payment for the Purchased Amount, Buyer will deliver to Seller the Purchase Price, shown above, minus any Origination Fee shown above....

Agreement ¶ 1.

The receivables were payable to Capital Stack at the rate of 8% of each receipt and the

3

Agreement called for a daily payment amount of $1,714.29.[2] *Id.* The Agreement also allowed

OST to request a daily payment amount adjustment.[3] The Agreement does not provide Capital

Stack with recourse against Plaintiffs in the event of business failure or slow down. Instead, the

Agreement provides that only the following events constitute a default:

> (a)Seller interferes with Buyer's right to collect the Daily Amount; (b) Seller violates any term or covenant in this Agreement; (c) Seller uses multiple depository accounts without the prior written consent of Buyer; (d) Seller changes its depositing account or its payment card processor without the prior written consent of Buyer; (e) Seller defaults under any of the terms, covenants and conditions of any other agreement with Buyer; or (f) Seller fails to provide timely notice to Buyer such that in any given calendar month there are four or more ACH transactions attempted by Buyer are rejected by Seller's bank.

*Id.* ¶ 5. The Agreement also specifies that it was a sale of future receivables, not a loan.[4] *Id.* ¶ 4.

Pursuant to the Guaranty, Womack unconditionally guaranteed the performance of

OTC's obligations under the Agreement and acknowledged that the Agreement was a purchase

of receivables, not a loan. *See* Guaranty p. 2, 5. OTC received $150,000 from Capital Stack and

---

2 The daily payment amount was calculated as Average Monthly Sales multiplied by the Specified Percentage; the product divided by Average Business Days in a Calendar Month. *Id.*

3 The Agreement reads: "Seller May Request Changes to the Daily Amount: The initial Daily Amount is intended to represent the Specified Percentage of Seller's daily Future Receipts. For as long as no Event of Default has occurred, once each calendar month, Seller may request that Buyer adjust the Daily Amount to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Seller agrees to provide Buyer any information requested by Buyer to assist in this reconciliation.... After each adjustment made pursuant to this paragraph, the new dollar amount shall be deemed the Daily Amount until any subsequent adjustment." Agreement, ¶ 2.

4 The Agreement reads, "Sale of Future Receipts (THIS IS NOT A LOAN): Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Buyer. If Future Receipts are remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, or if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller this Agreement. Buyer is buying the Purchased Amount of Future Receipts knowing the risks that Seller's business may slow down or fail, and Buyer assumes these risks based on Seller's representations, warranties and covenants in this Agreement that are designed to give Buyer a reasonable and fair opportunity to receive the benefit of its bargain. By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein. Seller agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns...." Agreement, ¶ 4.

only paid Capital Stack $9,000 of the $216,000 purchase price. *See* SAC ¶¶ 25-26.

## I. Procedural Background

On May 11, 2018 Plaintiffs filed their initial Complaint and claimed the Agreement

constituted a usurious loan. ECF No. 1. On June 13, 2018, Plaintiffs filed an Amended

Complaint. ECF. No. 19. On October 1,2018, the Court granted Plaintiffs' request to file the now

operative Second Amended Complaint. ECF No. 36. Defendants now move to dismiss the SAC

on various grounds. ECF No. 39.

Pursuant to Fed. R. Civ. P. 12(b)(5), Defendants move to dismiss the SAC based upon

allegedly forged summonses which Plaintiffs attempted to serve.[5]

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss the SAC claiming it

fails to state a claim entitled to relief. Plaintiffs' filed their opposition ("Pl's. Opp") on January

22, 2019 and Defendants replied on February 7, 2019.[6] ECF Nos. 47, 50.

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss a complaint must "provide the grounds upon

which [the] claim rests." *ATSI Commc'ns. Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a

short and plain statement of the claim showing that the pleader is entitled to relief...."). To meet

this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its

---

5  Specifically, Defendants argue that on or about May 16, 2018, Plaintiffs attempted to serve Defendants with the Complaint accompanied by invalid summonses that were signed by the clerk of court for the United States Court for the Eastern District of New York and did not include a seal from any court. *See* Declaration of Anna Rubin dated Oct. 29, 2018. ECF No. 41. ("Rubin Decl.") ¶ 2, Ex. 1. In June 2018 Plaintiffs caused the Court to issue proper summonses. *See* ECF Nos. 11, 12, 13, 15, 17. The summonses were delivered to Anna at Capital Stack's office on or about June 14, 2018, and Anna rejected the summons for "e-Prodigy Technology" because there is no such company. Rubin Decl. ¶ 4.

6  Plaintiffs withdrew the Intentional Infliction of Emotional Distress claim (count seven) in their moving papers.

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As previously stated, the Court accepts as true all factual allegations in the operative complaint and draws all reasonable inferences in Plaintiffs' favor. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S, at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins., Co.,* 648 F.3d 98, 104 (2d Cir. 2011).

Additionally, when considering fraud allegations, "the circumstances constituting fraud shall be stated with particularity." *Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir. 2000) (quotation and alteration omitted); *see also* Fed. R. Civ. P. 9(b). To meet this standard, a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak,* 216 F.3d at 306 (quotation omitted).

## DISCUSSION

**I.  Plaintiffs' Usurious Contract Claim**

Plaintiffs argue the Agreement was "usury and void," whereas Defendants declare

the transaction was a merchant cash advance transaction ("MCA") outside of New York's usury laws. The crux of Plaintiffs' SAC is the allegation that the Agreement constitutes a usurious loan. Thus, the Court must determine how to truly describe the Agreements.

## A. New York Usury Law

New York Penal Law § 190.40 provides in relevant part that:

> A person is guilty of criminal usury in the second degree when ... he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

The essential element of usury is the existence of a loan or forbearance of money. *See Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017) ("*TVT Capital*") (quoting *Feinberg v. Old Vestal Rd. Assocs.*, 157 A.D.2d 1002, 1003, 550 N.Y.S.2d 482, 483 (3d Dep't 1990). Without a loan, "'there can be no usury, however unconscionable the contract may be.'" *TVT Capital,* 252 F. Supp. 3d at 280 (quoting *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744, 598 N.E.2d 7, 11–12, 586 N.Y.S.2d 240, 244–45 (1992)). Determining usury is a question of fact. *Id.* (citing *Ujueta v. Euro-Quest Corp.*, 29 A.D.3d 895, 896 (2006)).

To constitute a loan, the transaction must involve a borrower and a lender. *See TVT Capital,* 252 F. Supp. 3d at 281. Furthermore, the lender must have purposefully loaned money at a usurious interest reserved in some form by the contract, and the borrower must have agreed to these usurious terms. *Id.*; *see also Donatelli v. Siskind*, 170 A.D.2d 433, 434, 565 N.Y.S.2d 224, 226 (2d Dep't 1991). Thus, courts must determine a transaction's purpose by its true character, under all circumstances, rather than its title. *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 950 N.Y.S.2d 723, 35 Misc.3d

1205(A), 2012 WL 1087341, at *6 (Sup. Ct. 2012); *see also Vjuetta v. Euro–Quest Corp.*, 29 AD3d 895 (2d Dep't 2006).

Additionally, where the effective interest rate is based upon a contingency in the debtor's control, usury laws do not apply. *Hamilton Capital VII, LLC v. Khorrami, LLP*, 2015 N.Y. Misc. LEXIS 2954, *20 fn. 14 (N.Y. Co. Sup. Ct. 2015); *see also Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, No. 216CV1545DRHGRB, 2019 WL 1473090, at *5 (E.D.N.Y. Apr. 3, 2019) (quoting *TVT Captial*, 252 F. Supp. 3d at 281 ("When a payment or enforcement rests on a contingency, the agreement is valid though it provides for a return in excess of the legal rate of interest."))

**B. The Agreement is Not A Loan**.

The Agreement explicitly excludes an interest rate and boldly states "(THIS IS NOT A LOAN)". *See* Agreement ¶ 4. Nevertheless, "[w]hen a[n agreement] is not usurious on its face, a court will not presume usury; rather, the party asserting [usury] must prove all the elements, including usurious intent." *LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, No. 17 Civ. 4006 (RJS), 2018 U.S. Dist. LEXIS 202540, 2018 WL 6547160, at *5 (S.D.N.Y. Aug. 28, 2018) (internal quotation marks omitted); *see also EMA Fin., LLC v. AIM Expl., Inc.*, 2019 U.S. Dist. LEXIS 26141, at *17 (S.D.N.Y. Feb. 19, 2019). There is a strong presumption against a finding of usury. *Giventer v. Arnow*, 37 N.Y.2d 305,309 (1975); *Richardson v. Brisard & Brisard, Inc.*, 2012 N.Y. Misc. LEXIS 3215, *8 (Sup. Ct. Kings. Co. 2012).

Plaintiffs argue Defendants had a usurious intent. Specifically, Plaintiffs contend they were "tricked and deceived" into entering a predatory loan without knowing the "true interest rate of

44%".[7] Accordingly, the Court turns to the substance of the transaction to find usury.

## C. The Substance of the Agreement

New York State Courts encourage courts to consider three factors to determine if an agreement is a loan or a merchant agreement: (1) whether there is a reconciliation provision; (2) whether the agreement has an indefinite term; and (3) whether the plaintiff has any recourse should the merchant declare bankruptcy. *Power Up Lending,* 2019 WL 1473090, at *5, *K9 Bytes, Inc. v. Arch Capital Funding*, 56 Misc. 3d 807, 817 (N.Y. Sup. Ct. 2017) (citing *IBIS Capital Group, LLC v. Four Paws Orlando LLC*, 2017 WL 1065071 (N.Y. Sup. Ct. 2017) ("*Four Paws Orlando*")). An MCA transaction is not a loan where the agreement provided that the buyer purchased a fixed amount of the seller's future sales proceeds which were deliverable to the buyer from a percentage of the seller's daily sales proceeds. *Id.* at *5-6. Instead, this constitutes an "agreement to purchase future receivables for a lump sum discounted purchase price payable in advance by the plaintiff in exchange for a contingent return." *Id.*

The primary indicia of a loan are the debtor's absolute obligation to repay the principal sum without risk to the creditor of the debtor's business failure. *Zoo Holdings, LLC v. Clinton*, 2006 N.Y. Misc. LEXIS 225, *10 (N.Y. Co. Sup. Ct. 2006) (citing *Rubenstein v. Small*, 273 A.D. 102, 104 (1st Dep't 1947).

Here, there is no dispute that the Agreement contains a reconciliation provision and provides a fixed share of revenues until the purchased amount has been remitted, regardless of the passage

---

7 Plaintiffs also encourage the Court to calculate the "*operative interest rate*," to find that it is actually 82%, 57% over New York State's usury rate of 25% inasmuch as the money was borrowed on February 26, 2018 and the Judgment calculated on March 12, 2018. Importantly, it was not filed until June of 2018, one month after commencement of this action and entered with the Court in August of 2018. (Exs. "C" and "D")

of time. The parties dispute, however, whether Defendants bore any risk of a potential OTC bankruptcy.

### D. There was no Unconditional Guarantee to Repay the Purchase Amount

Plaintiffs argue Defendants' bore no risks because the Agreement and Guaranty created an "unconditional" guarantee to pay the Purchase Amount. *See* Pl's. Opp. at 10. However, the express terms of the Agreement and Guaranty say otherwise.

The buyer bears a risk if the contingency—the seller's success (or lack thereof) collecting future receivables—determines the rate and completeness of repayment. *Four Paws*, 2017 N.Y. Misc. LEXIS 884, *6-11. MCA transactions cannot be considered loans where the MCA funders' purchase price was placed at hazard and they had no absolute right of repayment if the businesses failed. In *Four Paws Orlando*, a New York court ruled that an agreement for the purchase of future receivables and sales proceeds was not a loan transaction and not subject to usury laws. *Id*. 2017 N.Y. Misc. LEXIS 884, *4 (internal quotations omitted). The court found that the "primary indicia of usury is repayment of the principal sum advanced absolutely" and "in the underlying agreement ... the advance will only assuredly [be] repaid if the defendant defaults. Moreover, plaintiff surrendered control of repayment." *Id*; *see also Merchant Cash & Capital, LLC v. Liberation Land Co., LLC,* 2016 N.Y. Misc. LEXIS 4854, *8 (Sup. Ct. Nassau Co. Dec. 12, 2016).

Similarly, in *Liberation Land*, the agreement at issue involved a purchase of future receivables in return for an upfront payment. *Liberation Land*, 2016 N.Y. Misc. LEXIS

4854, at *5-6. The repayment was based upon a percentage of daily receipts, and the repayment period was indeterminate. *Id.* The court ruled the agreement was not a loan because the defendants bore a risk. The court reasoned that "[u]nder the terms of the subject Agreement, if Seller/Defendant produces no daily revenue, no payments are required, and there is no absolute obligation of repayment." *Id.* at *8. The court also noted that converting the agreement to a loan would require "unwarranted speculation" and contradict the explicit terms of the agreement. *Id.* at *6.

Here, according to the Agreement, Capital Stack bears the risk of OTC's failure (i.e., discontinuance of receipt of future receivables) and there is no absolute payment obligation. As with the MCA agreements in *Four Paws Orlando* and *Liberation Land*, Capital Stack has no recourse against OTC in the event of OTC's bankruptcy. *See Four Paws Orlando*, 2017 N.Y. Misc. LEXIS 884, at *7; *Liberation Land Co., LLC,* 2016 N.Y. Misc. LEXIS 4854, *8. The Agreement expressly provides that "if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to Buyer and would not be in breach of or default under this Agreement."[8] Agreement ¶ 4. Instead, default occurs only where OTC breaches the Agreement, such as by obtaining a new credit card processor or using multiple depository accounts. *Id.* ¶ 15.

---

8 The Agreement specifically provides: "Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Buyer. If Future Receipts are remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, or if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to Buyer and would not be in breach of or default under this Agreement." Agreement, ¶ 4, Ex. 1

Accordingly, neither OTC nor Womack would owe Capital Stack anything if OTC ceased operations in the ordinary course of business. Under the express terms of the Agreement, neither OTC nor Womack would be responsible for paying the Purchased Amount if OTC ceased operations in the ordinary course of business. Therefore, Plaintiffs did not have an unconditional requirement to repay the Purchase Amount, and Defendants bore a risk of loss.

Notwithstanding the Agreement, Plaintiffs argue that Womack's Confession of Judgment and Guaranty relieves Defendants of any risk. *See* Opp. at 12. The New York Appellate Division, First Department recently affirmed a decision dismissing a complaint alleging that a confession of judgment to enforce a merchant agreement was usurious and void. *See Champion Auto Sales, LLC v. Pearl Beta Funding LLC,* 159 A.D.3d 507 (1st Dep't 2018) *aff'g* 2017 N.Y. Misc. LEXIS 5355 (Sup. Ct N.Y. Co. June 15, 2017). In *Champion*, the court determined that the agreement was not a loan because, as here, the defendant purchased a percentage of the plaintiff's future receivables for a specified advance minus fees. *Id.,* 2017 N.Y. Misc. LEXIS 5355, at* 1-2.

Here, Womack's Guaranty merely guaranteed "prompt and complete performance of all of Seller's obligations under the Purchase Agreement." Guaranty, ¶ 2, Ex. 2, Boxer Decl. Thus, Womack's obligations under the Guaranty were no broader than OTC's obligations under the Agreement, and Womack did not agree to pay the Purchase Amount if OTC was unable to pay because it ceased operations in the ordinary course of business. The Guaranty did not alter Capital Stack's risk of non-payment if OTC's business failed.

Similarly, Womack's confession of judgment does not convert the Agreement into a

loan either. Parties routinely enter into confessions of judgment in connection with

agreements for the sale of future account receivables and courts reject arguments

claiming these agreements are usurious. *See*, e.g. *Champion*, 159 A.D.3d 507. Like the

Guaranty, the confession of judgment is triggered only if OTC breaches the

Agreement; not if OTC is unable to pay the Purchased Amount. Therefore, neither the

Guaranty nor the confession of judgment alleviated Defendants' risks and, thus, the

Agreement was not a loan. *See Platinum Rapid Funding Group Ltd. v. VIP Limousine*

*Servs., Inc.,* 2016 N.Y. Misc. LEXIS 4131, at *9 (Sup. Ct. Nassau Co. Oct. 27, 2016).

### E. *Dura lex, sed lex* - The Law Is Harsh, But It Is The Law

At least twenty-eight other recent decisions by State and Federal courts in New

York found that similar MCA transactions were not loans subject to New York's

usury laws.[9] Plaintiffs fail to cite any persuasive authority ruling in their favor.

---

9 *See Wilkson Floor Covering, Inc. v. Cap Call LLC,* 2018 NY Slip Op 30943(U) (Sup. Ct. N.Y. Co. May 16, 2018); *Colonial Funding Network, Inc. v. Epazz, Inc.,* 2017 U.S. Dist. LEXIS 70747, *9-14 (S.D.N.Y. May 9, 2017); *K9 Bytes, Inc. v. Arch Capital Funding, LLC,* 2017 N.Y. Misc. LEXIS 1903, *12-15 (Sup. Ct. Westchester Co. May 4, 2017); *IBIS Capital Group, LLC v. Frontier Auto Plans, Inc.,* 2017 N.Y. Misc. LEXIS 1684, *1 (Sup. Ct. Apr. 25, 2017); *Four Paws Orlando LLC,* 2017 N.Y. Misc. LEXIS 884, *6-11; *Merchant Cash & Capital, LLC v. Sogomonyan,* 2017 N.Y. Misc. LEXIS 1983, *12-13 (Sup. Ct. Nassau Co. Mar. 2, 2017); *Chartock v. National Bank of California,* 2017 N.Y. Misc. LEXIS 673, *4 (Sup. Ct. Queens Co. Jan.17, 2017); *Merchant Cash & Capital, LLC v. Frederick & Cole, LLC,* 2016 N.Y. Misc. LEXIS 5084, *13-14 (Sup.Ct. N.Y. Co. Dec. 21, 2016); *Merchant Cash & Capital, LLC v. Fire Suppression Servs., inc.,* 20 1 6 N.Y. Misc. LEXIS 4855, *2-3 (Sup. Ct. Nassau Co. Dec.16, 2016); *Retail Capital, LLC v. Spice intentions Inc.,* 2016 N.Y. Misc. LEXIS 4883, *6-7 (Sup. Ct. N.Y.Co. Dec. 9,2016); *Liberation Land Co., LLC,* 2016 N.Y. Misc. LEXIS 4854, *5-8; Merchant *Cash & Capital, LLC v. South Jersey Speed LLC,* 2016 N.Y. Misc. LEXIS 4852, *3-4 (Sup. Ct. Nassau Co. Dec. 13, 2016); *Merchant Cash & Capital, LLC v. Transfer Intl. Inc,* 2016 N.Y. Misc. LEXIS 4515, *7-8 (Sup.Ct. Nassau Co. Nov. 2, 20 1 6); *Merchant Cash & Capital, LLC v. Randa's Bakely, Inc.,* 20 1 6 N.Y. Misc. LEXIS 3342, *7-9 (Sup. Ct. Nassau Co. Sept. 20, 2016); *Merchant Cash & Capital, LLC v. Yehowa Med Servs., Inc.,* 2016 N.Y. Misc. LEXIS 3065, *7-8 (Sup. Ct. Nassau Co. July 29, 2016); *Merchant Cash & Capital, LLC v. G&E Asian Am. Enter., Inc.,* 2016 N.Y. Misc. LEXIS 3067, *7-9 (N.Y. Sup. Ct. July 29, 2016); *Platinum Rapid Fzmding Group Ltd. v. VIP Limousine Servs., Inc.,* 2016 N.Y. Misc. LEXIS 3068, *7-8 (Sup. Ct. Nassau Co. June 8, 2016); Professional *Merchant Advance Capital, LLC v. Your Trading Room, LLC,* 2012 N.Y. Misc. LEXIS 6757, *12-14 (Sup.Ct. Suffolk Co. Nov. 28, 2012); *Merchants Capital Access, LLC v. South Shore Motorsports, LLC,* 2011 N.Y. Misc. LEXIS 4202, *27 (Sup. Ct. Nassau Co. Aug. 19, 2011); *Merchants Advance, LLC v. Tera K, LLC,* 2008 N.Y. Misc. LEXIS 10889, *4 (Sup. Ct. N.Y. Co. Dec. 16, 2008); *Merchant Cash & Capital, LLC v. Edgewood G,p., LLC,* 2015 U.S. Dist. LEXIS 94162, *10-12 (S.D.N.Y. July 2, 2015) aff'd 2015 U.S. Dist. LEXIS 94018, *1-2 (S.D.N.Y. July 20, 2015); *Merchant Cash & Capital, LLC v. Hobby Horse Welding, Inc.,* 2016 N.Y. Misc. LEXIS 4894, *3 (Sup. Ct. Nassau Co. Dec. 21, 2016); *Merchant*

Indeed, Plaintiffs acknowledge the overwhelming New York authority opposing their contentions. Yet, Plaintiffs suggest the Court overlook these decisions and essentially re-write New York law. *See* Opp. at 12. Plaintiffs' counsel admits that "New York has a judicially entrenched favor against finding ... [MCA agreements] usurious," but in their 'humble opinion, New York's rules are antiquated and fail to understand the level of trickery and deceit" in the industry. *Id.* The Constitution does not prevent Plaintiffs and their counsel from holding this opinion and sharing it with the Court. However, the Constitution does prevent the Court from ignoring established law. To effect change, the proper place for Plaintiffs to present such opinions is before the state legislature, not this court.[3] Presently, courts have established that an MCA transaction is not a loan where, as here, the buyer: 1) purchases a fixed amount of the seller's future sales proceeds; 2) the proceeds are deliverable from a percentage of the seller's daily sales proceeds; and, 3) the agreement provides no liability if the seller ceases operations in the ordinary course of business. *See*, e.g. *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 281-83 (S.D.N.Y. 2017); *Four Paws*, 2017 N.Y. Misc. LEXIS 884, at *5-7.

Accordingly, the transaction at issue here was a purchase of future receivables, not a loan, and Plaintiffs' first cause of action for usury and void contract fails as a matter of law.

---

*Funding Services, LLC v. Micromanos Colp.*, Sup. Ct. Orange Co. Index No. EF000598/2017 (ECF. No. 23; May 4, 2017) (attached as Ex. 7 to Boxer Decl.); *Merchant Cash & Capital, LLC v. Ethnicity, Inc.*, 2016 N.Y. Misc. LEXIS 4856 (Sup. Ct. Nassau Co. Dec. 8, 2016); *Merchant Cash & Capital, LLC v. Cramer E. Constr. LLC*, 2016 N.Y. Misc. LEXIS 4647 (Sup. Ct. Nassau Co. Nov. 4, 2016); *Retail Capital. LLC v. Daniel Leahy*, 2016 N.Y. Misc. LEXIS 4040 (Sup. Ct. Nassau Co. Oct. 13, 2016); *First Funds, LLC v. Yoshi Trading Co.*, Sup. Ct. N.Y. Co. Index No. 650030/2011 (ECF. No. 14, Sept. 28, 2011) (attached as Ex. 8 to Boxer Decl.).

## II.     Failure to Disclose Claim

Plaintiffs' second cause of action alleges Defendants made various misrepresentations and failed to disclose material information. Specifically, Plaintiffs allege that Capital Stack failed to disclose that (1) Capital Stack is "intertwined" with the Rubin Law Firm; (2) Capital Stack's sole principal is David; (3) David changed his sir name to Rubin from "Rubinov" and was previously the subject of an SEC investigation; and (4) Defendants' corporate structures are designed to conceal that the Agreement is a loan. SAC. ¶¶ 39-51. These claims fail as well.

To properly claim fraud under New York law, "a plaintiff must show a material representation or omission of fact, made with knowledge of its falsity, with scienter or an intent to defraud, upon which the plaintiff reasonably relied, and that such reliance caused damage to the plaintiff." *Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, No. 1:17-cv-1235-GHW, 2019 U.S. Dist. LEXIS 55977, at *35 (S.D.N.Y. Mar. 30, 2019) (internal quotations omitted). "A fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." *Kaufman v. Cohen*, 307 A.D.2d 113, 119-20 (1st Dep't 2003). Such a duty can arise where there is a fiduciary relationship. *Id*.

"The arm's length nature of [a] transaction negates any alleged duty to disclose based upon a fiduciary relationship." *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 327 (1st Dep't 1996). Even without a fiduciary relationship, however, a duty to disclose a material fact to a negotiation will be triggered where "'one party possesses superior knowledge, not readily available to the other, and knows that the other is

acting on the basis of mistaken knowledge.'" *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 551 (S.D.N.Y. 2007) (quoting *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 739 (2d Cir.1984).

Additionally, the plaintiff must allege that the undisclosed material fact was "peculiarly within the knowledge" of the other party and "that the information was not such that could have been discovered ... through the exercise of ordinary intelligence." *Jana L. v. W 129th St. Realty Corp.*, 22 A.D.3d 274,278 (1st Dep't 2005) (quotation and punctuation omitted).

## A. Defendants Had No Duty to Disclose

Here, Plaintiffs' claim fails because the SAC does not adequately allege that the Defendants had a duty to disclose the allegedly false material. Plaintiffs do not allege that they had any relationship giving rise to a duty to disclose. In the absence of such a relationship, Plaintiffs cannot assert a duty to disclose claim against Defendants. *See*, e.g. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566,582 (2d Cir. 2005) (noting that duty to disclose only arises in "three circumstances," where there is a "fiduciary relationship," one party has superior knowledge not readily available to the other and knows the other is acting based on mistaken knowledge, or the party has made a partial or ambiguous statement). Plaintiffs do not allege their relationship with Capital Stack stretched beyond arms' length. The SAC demonstrates the relationship was commercial: solely related to the Agreement and Guaranty. This does not create a fiduciary or other relationship giving rise to a Capital Stack duty to disclose. *See Henneberry*, 532 F. Supp. 2d at 550 (no fiduciary duty in arms' length

transaction absent "extraordinary circumstances"). Accordingly, Plaintiffs fail to establish that Defendants had a duty to disclose.

## B. Undisclosed Material was Discoverable

Furthermore, even if there were a duty to disclose, Plaintiffs' claim fails because the undisclosed material was reasonably discoverable. For example, the SAC alleges that Defendants failed to disclose that Capital Stack and the Rubin Law Firm were "intertwined." SAC ¶ 40. However, Plaintiffs acknowledge that "all of Rubin's law office attorneys are listed on the promotional materials for Defendant [Capital Stack] as if the entities are one and the same and operating in unity" and that Anna "is general counsel of Capital Stack" and the "principal and founder of the Rubin Law Firm…" *Id.* ¶¶ 40-43. Similarly, David is prominently listed on the e-Prodigy website as the CEO and founder of e-Prodigy and as the President and CEO of Capital Stack prior to forming e-Prodigy.[10] David is also listed as the CEO on Capital Stack's website.[11] Thus, the SAC concedes that the allegedly undisclosed information is disclosed in Defendants' promotional materials. The SAC also fails to allege that the Plaintiffs could not discover the undisclosed information through ordinary due diligence. Therefore, there is no basis for a failure to disclose claim based on this information. *See*, e.g. *Grumman Allied Indus. v. Rohr Indus., Inc.*, 748 F.2d 729, 739 (2d Cir. 1984) ("knowledge is not superior where the relevant information was either a matter of public record, was not pursued by plaintiffs, or

---

10 *See* https://e-prodigy.com/.
11 http://capitalstackllc.com/company

was disclosed at least in part") (quotation omitted). Moreover, though Plaintiffs allege to be "unsuspecting and unsophisticated people" of Bixby, Oklahoma deceived by "slick and fast-talking" New Yorkers, Plaintiffs were business people nonetheless. *See* e.g., SAC. ¶¶ 1, 6, 34, 77.[12] Plaintiffs reviewed the Agreement and the Guaranty before signing them, so they cannot allege these terms were not disclosed.

## C. David's Identity was Immaterial

Finally, the undisclosed information was immaterial. Plaintiffs assert that if they knew David Rubin's "true identity" and "nefarious past", they would not have entered the Agreement. Like the other allegedly undisclosed information, Rubin's past and name change were discoverable. Plaintiffs cite to no case law suggesting that Rubin had a duty to disclose his alleged securities law violations or his name change. *See In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 471 (Bankr. S.D.N.Y. 2007) (holding that plaintiff was a sophisticated business person and, if she had any concerns as to the identity of a party to a transaction she could have insisted on more specificity in the agreement and she had an equal opportunity to discover the party's identity).

Therefore, Plaintiffs' breach of duty to disclose and fraud claims in Count II are

---

12 Indeed, court records demonstrate that the Plaintiffs and Danny Womack entered into and defaulted on multiple merchant cash agreements with at least three other MCA companies besides Capital Stack. For instance, on August 25, 2017, Mantis Funding LLC filed a "Notice of Filing a Foreign Judgment" against Danny Womack and Oklahoma Express Heavy Haul LLC in the District Court of Tulsa County, Oklahoma, attaching a judgment obtained pursuant to an Affidavit of Confession of Judgment in connection with a "Merchant Agreement." *See* Boxer Decl. Ex. 3. Similarly, on July 20, 2017, Global Merchant Cash, Inc. filed a petition in the District Court of Tulsa County, Oklahoma against Oklahoma Express Heavy Haul, LLC and Danny Womack to enforce a "Merchant Agreement" and subsequently obtained a judgment in its favor, and on September 6, 2018, the District Court of Muskogee County, Oklahoma, granted a default judgment in *Western Surety Company v. Danny Womack, Elizabeth Womack, and 165 Auto Auction of Muskogee Inc. d/b/a I-40 Auto Auction of Muldrow. See* Boxer Decl. Exs. 4-6.

dismissed.

### III. Fraudulent Misrepresentation – Counts III and IV

In Count III, the SAC alleges that Capital Stack "knowingly and fraudulently allow[ed] the Plaintiffs to enter into the usurious agreement," and that unidentified "representatives of Fig Capital and Capital Stack' allegedly misrepresented that the Agreement was a "loan at 8% interest" with "reasonable fees," that Plaintiffs had to hurry to accept it, and that "it was a great offer". SAC. ¶¶ 57, 61. Plaintiffs also allege fraudulent misrepresentation in Count IV, stating that Capital Stack's "lenders and accounting practices were conducted in a negligent manner inconsistent with the industry standards." *Id.* ¶ 63. Both Counts fail to state a claim.

Essentially, both claims contend that Defendants misled Plaintiffs into believing that the Agreement was a loan with 8% interest. As previously discussed, the Agreement constituted a purchase of future account receivables. The terms Plaintiffs claim Defendants misrepresented were disclosed in the written agreement, and thus cannot be the basis for a misrepresentation claim. *See Mandarin v. Wildenstein*, 16 N.Y.3d 173, 178 (2011) (for fraudulent misrepresentation claims, plaintiff must allege a "misrepresentation or a material omission of fact which was false and known to be false") (quotation omitted); *see also JPMorgan Chase Bank, N.A. v. Controladora Comercial Mexicana S.A.B. de C.V.*, 2010 N.Y. Misc. LEXIS 5656 at *22 (Sup. Ct. N.Y. Co. Mar. 16, 2010) (rejecting fraudulent misrepresentation claim where complained of terms were disclosed in agreement and thus "any failure to scrutinize the contractual provisions" was plaintiff's fault) (quotation omitted).

Plaintiffs assert that Defendants assured them telephonically that the Agreement was a loan. SAC ¶ 50, Pl's. Opp. p. 2. However, even if Defendants made these oral representations, the Agreement specifies that it "embodies the entire agreement" between the parties and "supersedes all prior agreements, and understandings relating to the subject matter hereof." Agreement § 23. Even without those deficiencies, the third cause of action fails to meet Rule 9(b) pleading requirements because it does not identify the purported speaker or where and when the statements were allegedly made. *See*, e.g. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (to meet Rule 9(b) pleading requirements, plaintiff must (1) specify statements, (2) identify the speaker, (3) state where and when statements were made, and (4) explain why statements were fraudulent). Therefore, Plaintiffs' third cause of action is dismissed.

Plaintiffs' claim that Capital Stack's deficient accounting standards constitutes fraudulent misrepresentation fails as well. The SAC does not allege that Capital Stack made any representations about the quality of its accounting standards or had any duty to disclose such information. Furthermore, Plaintiffs fail to meet Rule 9(b)'s pleading requirements since SAC does not identify any speakers misrepresenting the accounting standards, where and when such statements were made, or how or why the statements were fraudulent. *See Rombach*, 355 F.3d at 170. Therefore, Plaintiffs' fourth cause of action is dismissed.

## IV.     Breach of Fiduciary Duty, Covenant of Good Faith, and Fair Dealing

### A.  Fiduciary Duty

20

In Count Five, Plaintiffs allege breach of fiduciary duty arising out of Defendants' total "monopoly and advantage" regarding the structure, formation and operation of the agreement. SAC ¶ 69. Specifically, Plaintiffs claim that Defendants exploited them for their own personal gain and therefore breached the fiduciary duty they owed to Plaintiffs. *Id.* ¶ 66. The Court disagrees.

Nothing in the SAC suggests Defendants were Plaintiffs' fiduciaries. "Absent extraordinary circumstances," "parties dealing at arm's length [sic] in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation." *Henneberry*, 532 F. Supp. 2d at 550. Plaintiffs' argument that a fiduciary relationship is created whenever one party drafts a contract fails as a matter of law.

Plaintiffs' assertion that Capital Stack had more information than Plaintiffs regarding the structure, formation and operation of the Agreement is also insufficient to allege a fiduciary relationship. Despite Plaintiffs' self-portrayals of naiveté, they were business people who read and presumably understood the documents they signed. Plaintiffs do not allege that the Agreement or Guaranty omit terms or provisions Plaintiffs' expected to see. *See Grumman Allied Indus.,* 748 F.2d at 739. The Court cannot reasonably infer a fiduciary relationship where there are no factual allegations indicating the parties intended for their relationship to be more than arms' length. *See WIT Holding Corp. v. Klein,* 282 A.D.2d 527, 529 (2d Dep't 2001) (dismissing claim for breach of fiduciary duty where parties "were involved in an arm's-length business transaction'); *Aaron Ferer & Sons,* 731 F.2d at 122 (dismissing

claim for fiduciary duty where there was "no evidence" that either party "intended that their relationship be something more than just the debtor-creditor relationship"); *Henneberry,* 532 F. Supp. 2d at 554 ("a fiduciary obligation will not be imposed on a party merely because it possesses relative expertise as compared to the other") (quotation omitted).

Thus, Plaintiffs' fiduciary duty claim fails because (1) they did not allege to have any communications or contact with Anna, David, e-Prodigy Technology or the Rubin Law Firm giving rise to a duty and (2) their relationship with Capital Stack was limited to an arms' length commercial transaction that did not create a fiduciary relationship.

### B. Covenant of Good Faith and Fair Dealing

Plaintiffs' breach of the covenant of good faith and fair dealing claim fails as well. Courts have held that a party does not breach the covenant of good faith and fair dealing when, as here, it "act[ed] in [its] own self-interest consistent with [its] rights under [the] contract. . . ." *BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC)*, Nos. 16-10455 (SHL), 16-01187 (SHL), 2016 Bankr. LEXIS 4113, at *102 (Bankr. S.D.N.Y. Dec. 1, 2016) (quoting *Ray Legal Consulting Grp. v. Dijoseph*, 37 F. Supp. 3d 704, 726 (S.D.N.Y. 2014); *DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 U.S. Dist. LEXIS 64848, at *116 (S.D.N.Y. July 27, 2009) ("Defendants did not violate the implied covenant of good faith and fair dealing by acting in [their] own self-interest consistent with [their] rights under a contract.") (internal quotation marks omitted); *Suthers v. Amgen Inc.*, 441 F. Supp. 2d 478, 485

(S.D.N.Y. 2006) ("Plaintiffs have no support for the broad proposition that an entity violates the implied covenant of good faith and fair dealing by acting in its own self-interest consistent with its rights under a contract. Indeed, courts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable.")).

As explained above, Plaintiffs do not allege Defendants performed any actions that were not permitted by the Agreement. Therefore, Plaintiffs' breach of the covenant of good faith and fair dealing claim is dismissed.

## V.      Declaratory Judgment

In Count VI, Plaintiffs seek a declaratory judgment that the Agreement was a loan with a usurious interest rate. SAC ¶¶ 72-74. However, the Court finds this claim to be duplicative of Plaintiffs' first cause of action.. *See Safi Classic S.A. de CV v. Hurowitz*, 444 F. Supp. 2d 231, 249-50 (S.D.N.Y. 2006) (declaratory judgment claim is duplicative where it "seeks no relief that is not implicitly sought in the other causes of action"). Even if not duplicative, for the reasons stated earlier, the agreement is not a loan. Therefore, Count VI is dismissed.

## VI.     Deceptive Acts and Practices

Plaintiffs also contend that Defendants violated New York General Obligations Law § 349(a), which prohibits certain deceptive acts or practices in commercial transactions. To state a claim under section 349, a plaintiff must show: (1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the plaintiff was

injured as a result of the deceptive act, practice, or advertisement. *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC* ("*RD Legal Funding*"), 332 F. Supp. 3d 729, 781-82 (S.D.N.Y. 2018); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA*, 85 N.Y.2d 20, 25 (1995).

Under the first prong, "consumer oriented" conduct is that which "has a broad impact on consumers at large." *Id.* (citing *Bennett v. State Farm Fire and Casualty Co.*,78 N.Y.S.3d 169, 161 A.D.3d 926, 2018 N.Y. App. Div. LEXIS 3482, 2018 WL 2225321, at *2 (N.Y. App Div. May 16, 2018). A "single shot transaction" tailored to a specific consumer is insufficient to show a "broad impact on consumers." *Hall*, 996 N.Y.S.2d at 315 (quoting *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 953 N.Y.S.2d 96, 102 (N.Y. App. Div. 2012)). Rather, the conduct must amount to a "standard practice that was [or is] routinely applied to all [consumers]" who engaged with the defendant. *Id.* at 102.

Here, the SAC properly alleges that Defendants' conduct was consumer oriented in that Defendants "solicited [business] over the internet and via phone aimed at unsophisticated consumers." SAC ¶ 80; *See also Oswego Laborers' Local 214 Pension Fund*, 623 N.Y.S.2d at 745 (holding conduct to be "consumer-oriented" where defendant Bank interacted with plaintiffs' representative the same as any other customer opening a savings account). According to the SAC, Defendants represent to consumers that its MCA agreements are not loans, incorrectly label them as "purchase of accounts receivables", and do not disclose the agreement's usurious interest rates. SAC ¶ 80. Accepting these allegations as true, the SAC properly alleges that Defendants' conduct was "consumer-oriented" since it was not limited to a single consumer

but rather was how Defendants interacted with all consumers. *See Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (finding that conduct was "consumer-oriented" because it was "not unique" to the plaintiffs, was not "private in nature" and not a "single shot transaction").

However, Plaintiffs' SAC fails to meet the statute's additional requirements. Under the second prong, the New York Court of Appeals has defined the term "materially misleading" conduct using an objective standard under which "the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *RD Legal Funding*"), 332 F. Supp. 3d 729, 782 (quoting *Orlander v. Staples Inc.,* 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). If the allegedly deceptive act was "fully disclosed," there can be no § 349(a) claim. *Id; see also Broder v. MBNA Corp.*, 281 A.D.2d 369, 371 (1st Dep't 2001); *Watts v. Jackson Hewitt Tax Service, Inc.*, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008).

Here, the transaction at issue did not involve deception. As demonstrated above, the Agreement specifically stated it was not a loan and failed to operate as such. Furthermore, the amount of time to pay the Purchased Amount can vary, thus rendering impossible any alleged calculation of an "interest rate." Moreover, the Agreement provides that the Purchase Price is $150,000 and the Purchased Amount is $216,000 and lists the origination fee and other fees which might be charged. *See* Agreement at ¶ 1; Appendix A. Plaintiffs do not allege they were charged an undisclosed amount. Therefore, since the Agreement disclosed all the material terms of the transaction, Defendants are not liable under NY GOL § 349. *See Broder*, 281

A.D.2d at 371; *Walts*, 579 F. Supp. 2d at 346. Thus, Count VIII is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' SAC is

GRANTED. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

**Dated:**  August 30, 2019
        New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**